

1     UNITED STATES DISTRICT COURT

2   WESTERN DISTRICT OF WASHINGTON AT TACOMA

3 _____

4          )
  JOSHUA FREED,      )
5          )
      Plaintiff,  )
6          )
  v.         )
7          ) 2:20-cv-0599-BHS
  JAY INSLEE,      ) 3:20-cv-5352-BHS
8          )
      Defendant.  )
9          ) Tacoma, Washington
          )
10  ERIC EUGENE CROWL,   ) May 8, 2020
          )
11      Plaintiff,  ) TRO Hearing
          )
12  v.         ) 1:30 p.m.
          )
13  JAY INSLEE,      )
          )
14      Defendant.  )

15 _____

16

      VERBATIM REPORT OF PROCEEDINGS
17   BEFORE THE HONORABLE BENJAMIN H. SETTLE
      UNITED STATES DISTRICT JUDGE
18 _____

19

20

21

22

23

24

```
 1

 2
                            APPEARANCES
 3

 4    For the Plaintiff        HIRAM SASSER
      Joshua Freed:            JUSTIN BUTTERFIELD
 5                             First Liberty Institute
                               2001 W. Plano Parkway
 6                             Suite 1600
                               Plano, Texas
 7
                               MARK C. LAMB
 8                             The North Creek Law Firm
                               12900 NE 180th Street
 9                             Bothell, Washington

10
      For the Plaintiff        ERIC EUGENE CROWL
11    Eric Eugene Crowl:       Pro Se
                               7019 75th Street SW
12                             Lakewood, Washington

13
      For the Defendant        ZACHARY P. JONES
14    Jay Inslee:              JEFFREY T. EVEN
                               PAUL M. WEIDEMAN
15                             Attorney General's Office
                               P. O. Box 40100
16                             Olympia, Washington

17

18

19

20

21

22

23

24

25
```

```
 1                                    AFTERNOON SESSION

 2                                    MAY 8, 2020

 3          THE CLERK:  United States District Court is now in

 4   session, the Honorable Benjamin H. Settle presiding.

 5       We are going on the record in Eric Crowl versus Jay Inslee

 6   and Joshua Freed versus Jay Inslee, Cause Numbers CV20-5352

 7   and CV20-599-BHS.

 8       Counsel, please make an appearance for the record.

 9          MR. LAMB:  Mark Lamb for Plaintiff Joshua Freed.

10          MR. SASSER:  Hiram Sasser for Plaintiff Joshua Freed.

11          MR. BUTTERFIELD:  Justin Butterfield for Plaintiff

12   Joshua Freed.

13          MR. CROWL:  Eric (inaudible).

14          COURT REPORTER:  I did not hear the person that just

15   spoke. This is the court reporter, Angela Nicolavo.  Could

16   you please repeat --

17          MR. CROWL:  Yes. Eric Crowl, plaintiff.

18          COURT REPORTER:  Thank you very much. I got it this

19   time.  Thank you.

20          THE COURT:  Good afternoon, everyone.  Thank you for

21   appearing through this WebEx platform and coordinating with

22   Tony Duck from our IT department, and Gretchen Craft, the

23   in-court deputy clerk here.

24       My previous hearings during this period of courthouse

25   closure have been conducted remotely through teleconference.
```

1    This is our first WebEx video hearing.  Mr. Duck will be

2    available should we have any technical issues that arise.

3        This is a public hearing.  Members of the public or press

4    may be observing the proceedings.  I want to remind everyone

5    that Local Rule 78(b) prohibits the broadcast or streaming of

6    any audio or video recordings in connection with the judicial

7    proceeding except as may be authorized by either the Judicial

8    Conference of the United States or the Judicial Council of

9    the Ninth Circuit.

10       Before I hear argument, I will make a few general

11   comments.  We all have been engaged in a journey through

12   territory never traveled by this generation or really any

13   other.  Crushing pandemics have been part of human history

14   over the many centuries.  This country experienced such a

15   devastating pandemic in 1917 and in 1918.

16       While to this point, and it is believed as we go ahead

17   living with the presence of this coronavirus, we have not,

18   and will not, see the loss of life that the country and the

19   world have had visited on it over a century ago, but never

20   has the world seen a kind of universal quarantine in the form

21   of required or advised stay-at-home orders from federal and

22   state officials.

23       The subject of this hearing then carries with it strong

24   opinions and emotions of citizens on each side of the

25   arguments that we will hear this afternoon.  Everyone here, I

1   believe, reveres this country's Constitution, as I do.  It is
2   within that Constitution that the third branch of government,
3   the judiciary, is charged with the responsibility of
4   resolving disputes between citizens and their government
5   when the interpretation and the application of the Bill of
6   Rights are at issue.
7       Both sides will argue that they are protecting and
8   defending the Constitution.  These rights have been the
9   subject of judicial decisions since the Bill of Rights were
10  adopted 239 years ago.
11      Let's keep in mind here that the advocates on both sides
12  are acting out of a profound respect for our Constitution
13  that sets out important governmental powers and
14  responsibilities, while preserving and reserving some basic
15  civil rights to its citizens.
16      On such serious matters as those before this Court, the
17  decision made or decisions made here are not usually the last
18  word.  As we have learned, there are lowers courts and
19  appellate courts across the country that have been and are
20  being presented with issues nearly the same or very similar
21  to the ones before the Court.  The fact that there are
22  divergent rulings only points to the complexities of a social
23  landscape not examined before in American jurisprudence.
24      On May 6, Mr. Crowl filed an Amended Complaint rendering
25  technically moot the motion for a temporary restraining

1   order, so the Court yesterday, May 7th, entered a show cause

2   order requiring the plaintiff, by nine a.m. today, to show

3   cause why the present motion for a temporary restraining

4   order is relevant.

5       The plaintiff responded yesterday asserting that the

6   defendant is, quote, "unlikely to present any other arguments

7   aside from their current arguments," end of quote.

8       The Court then entered a minute order finding that the

9   Court need not sua sponte strike the hearing and the

10  defendant would have the option to proceed since the content

11  of the new motion for temporary restraining order does not

12  alter in any significant way than the original motion.

13      Earlier today, the defendant filed his notice indicating

14  he has no objection to proceeding on the TRO motion today.

15  Mr. Crowl pointed out in his pleadings that the Court did

16  not, as he had requested, consider the motion for a temporary

17  restraining order ex parte.

18      The Court, in its 13 years, has rarely granted ex parte

19  restraining orders.  In the vast majority of such cases, the

20  Court requires notice of hearing be given to the party

21  against whom the motion is seeking injunctive relief.

22      The Court viewed this matter in such a light so that the

23  defendant was given an opportunity to respond and appear,

24  which he has.

25      I will hear argument this afternoon sequentially, taking

1   Mr. Freed first, followed by counsel from the Attorney

2   General's Office.  This will be followed by an argument from

3   Mr. Crowl, and then again from the Attorney General's Office.

4   None of the same arguments and response by the defendant will

5   be -- some of those arguments will be the same and need not

6   be repeated.

7       So I am prepared to begin and hear from Mr. Lamb,

8   representing Mr. Freed.

9           MR. LAMB:  Good morning (sic), Your Honor.  I

10  apologize that I am not on video.  I had a little bit of

11  problems with that.  Are you able to hear me clearly?

12          THE COURT:  I am.  I am able to hear you.  We will

13  see how clearly.

14          MR. LAMB:  Very well. Thank you.

15          THE COURT:  Or we will hear how clearly.

16          MR. LAMB:  Indeed.  I wanted to ask the Court at the

17  beginning, out of respect for the Court's time and judicial

18  economy, do you want to hear Mr. Freed's argument presuming

19  that the answer in our (inaudible) against the Governor to

20  apply is no (inaudible) --

21          COURT REPORTER:  Excuse me. This is the court

22  reporter. Mr. Lamb --

23          MR. LAMB:  (Inaudible) -- because if the response is

24  yes, as we indicated in our reply brief, we will be

25  withdrawing our motion before the Court.

1    THE COURT:  Who will be speaking here for the

2    Governor? May I hear from counsel for the Governor as to the

3    question of whether or not Mr. Freed's activity of engaging

4    in one-on-one Bible study in his backyard would be deemed an

5    excepted -- or exempted activity under the spiritual

6    counseling exception?

7    MR. EVEN:  Your Honor, Mr. Jones will be speaking for

8    the State.  I am not sure why we are not hearing from him.

9    THE COURT:  All right.

10   MR. JONES:  Your Honor, can you hear me?

11   THE COURT:  I can hear you.

12   MR. JONES:  I apologize.  I was on mute, not for the

13   first time during these virtual experiences for the past few

14   months.

15   THE COURT:  I appreciate that. I have had many

16   conferences over the last few weeks in which people were

17   mistakenly not on moot when they intended to be and

18   vice versa.  I appreciate we are dealing in sort of new

19   territory as judges and lawyers.

20      You may proceed.

21   MR. JONES:  Thank you, Your Honor.  Again, for the

22   record, this is Zachary Pekelis Jones on behalf of

23   Governor Inslee.

24      Mr. Freed asks the Governor to confirm whether prayer time

25   on a one-on-one basis is the counseling exemption from the

stay home order.  At the same time, though, Mr. Freed does

not seek to conduct what he understands to be religious

counseling.  In a sense, he is trying to have it both ways.

From my perspective, it appears to be little more than a

semantic game.  I don't see any (inaudible) at play.  The

Governor's consistent guidance and --

COURT REPORTER:  Mr. Jones, Mr. Jones, I am so sorry.

This is the court reporter.  The connection is just really

garbled.  It was also very garbled when Mr. Lamb spoke.  I am

really struggling to follow exactly what you are saying.  I

apologize for interrupting.

THE COURT:  I also am having some difficulty.  I am

wondering whether we should dispense with the video aspect

here and go strictly to teleconference, if it would -- what

is the most important is not whether I can see you while you

speak, but whether I can clearly hear you while you speak.

MR. JONES:  My audio is through a telephone.  I am

not sure if that would be causing the problem.

MR. DUCK:  This is Tony from IT.

Mr. Jones, did you say you were through a telephone?

MR. JONES:  Yes, I am.

MR. DUCK:  It could be that you are on speaker so

your speaker is getting back into your microphone.  Is there

any way that you can bring the phone closer to you or somehow

put on ear buds to go with your phone?

1        MR. JONES:  I just brought the phone as close to me

2  as possible.  Is it any --

3        THE COURT:  He's still breaking up.

4        MR. DUCK:  Yeah, it is feeding back into itself.

5  Like I said, the best thing we can do is not have you on

6  speaker phone and that would help.

7        MR. JONES:  Okay. I just picked up the telephone,

8  literally. Is this any better?

9        COURT REPORTER:  That is significantly better. That

10  is awkward, but clear.

11        MR. JONES:  I, in this very awkward fashion, will

12  proceed.  Desperate times call for desperate measures.

13   I will start at the beginning to answer Your Honor's

14  question. The short answer is, I think, yes, the activities,

15  as Mr. Freed describes them, would appear to fit the

16  religious counseling exemption to the stay home order, if,

17  that is, he wished to avail himself of that exemption.  The

18  trick, of course, is that he asks the Governor to confirm

19  whether what he describes as prayer time on a one-on-one

20  basis fits the counseling exemption from the stay home order,

21  but at the same time, Mr. Freed states that he, quote, does

22  not seek to conduct what he understands to be religious

23  counseling.

24   I don't think he can have it both ways.  This is perhaps

25  just a semantic game, but if it is, it is not one the

1    Governor is inclined to play.  In the Governor's consistent

2    guidance, and in his most resent proclamation, he has

3    confirmed that counseling, whether religious or secular, may

4    be conducted in person where remote counseling is not

5    possible.  The Governor has deliberately tried avoiding --

6    deliberately avoided, that is, defining what constitutes

7    counseling, recognizing that it may come in many forms and

8    engaged in for many different reasons and offered by a wide

9    range of professionals and individuals, including faith

10   leaders.

11       We certainly do not think that it should be so narrowly

12   defined as Mr. Freed suggests in his reply affidavit to mean,

13   quote, "the treatment of those diagnosed with disorders

14   listed in the DSM-5."  People receive counseling for a wide

15   range of reasons, including what Mr. Freed describes as

16   spiritual guidance, fellowship and emotional, mental and

17   spiritual support.  We would have no reason to doubt the good

18   faith of a person seeking to utilize the counseling exemption

19   for such purposes.

20       Your Honor, if I may say, it is especially hard to imagine

21   that any sort of enforcement action would be taken against a

22   person engaging in this sort of one-on-one religious

23   counseling in his back yard.  If Mr. Freed chooses to

24   forebear such activity because he does not consider it

25   counseling, that is entirely a self-inflicted restriction.

1          THE COURT:  I was going to ask you the question:  You

2    would not expect, as a chief executive officer, your client,

3    the chief executive law enforcement officer of the state, to

4    seek out the enforcement of the stay-at-home order against

5    Mr. Freed when he is exercising his right to engage in Bible

6    study one-on-one with someone else in his own back yard?

7    That's what I hear you saying.

8          MR. JONES:  That is correct, Your Honor.  I may add,

9    that enforcement is primarily driven through a

10   complaint-driven process where people submit complaints

11   against various businesses.  It is difficult to imagine how a

12   complaint would arise based on the activity as Mr. Freed has

13   described it.

14       Furthermore, it just doesn't seem feasible for how that

15   sort of enforcement action would take place.  Of course, it

16   wouldn't be the Governor enforcing it.  It would be local law

17   enforcement, the King County Sheriff, Bothell police, et

18   cetera.

19         THE COURT:  Of course, I understand that.  My

20   question was whether or not the chief law enforcement

21   executive officer of the state would expect local law

22   enforcement to enforce the stay-at-home order under the facts

23   as presented by Mr. Freed in the pleadings here.

24         MR. JONES:  No, Your Honor.

25         THE COURT:  Mr. Lamb, I will hear from you.  This

1    even makes more clear the problem of whether or not his claim

2    is ripe.

3             MR. LAMB:  Your Honor, this would be the response

4    that we were seeking two weeks ago when I wrote to the

5    Governor's counsel.  I am relieved the Governor has affirmed

6    on the record in federal court and conceded that they do not

7    believe the stay-at-home order is enforceable against

8    Mr. Freed with respect to personal prayer, not in a

9    counseling context, not as a licensed counselor, not as a

10   professional, but as a private citizen praying and reading

11   scripture with somebody in his yard. What I heard from the

12   government -- from the Governor's counsel is they do not

13   believe that is enforceable.  That is certainly our opinion

14   and, Your Honor, I would -- provided that is on the record

15   and clear to Mr. Freed, a private citizen, can pray, read the

16   Bible with another private citizen in his residence and be

17   compliant under the Governor's order, we would withdraw our

18   motion for a temporary restraining order.

19            THE COURT:  Of course, with the social distancing and

20   other guidelines there.

21            MR. LAMB:  Indeed, Your Honor, the same social

22   distancing guidelines that would apply to a counseling

23   session between a private counselor or religious counselor,

24   yes.

25            MR. JONES:  Your Honor, may I make one statement just

1    for the record?

2          THE COURT:  You may.

3          MR. JONES:  As the Governor has made clear in his

4    most recent proclamation earlier this week, as well as in

5    guidance for at least a month to legislators, members of the

6    media, and others, in-person counseling is permitted, but

7    only if remote counseling is not possible.  Just as the

8    Governor has not promulgated guidance specifically defining

9    what constitutes counseling, he has not promulgated guidance

10   regarding what "not possible" means in this context.  He

11   trusts the individual practitioners, members of faith

12   communities to make these decisions for themselves in good

13   faith so that their needs, counseling needs, spiritual or

14   secular, can be met safely and in the context of the

15   proclamation.

16         THE COURT:  All right.  We will proceed, then, unless

17   there is further comments or questions concerning Freed vs

18   Inslee, to hear from Mr. Crowl.

19         MR. CROWL:  Yes, Your Honor.  Thank you for --

20   (connectivity disruption).

21      Sorry, we will try it --

22      I have a speech disability.  I appreciate everyone's

23   patience.

24      My argument is promulgated on a series of arguments, not

25   just one argument.  I believe that the Governor's order

1   violates core constitutional (inaudible) to operate under

2   (inaudible) --

3           COURT REPORTER:  Mr. Crowl, this is the court

4   reporter.  Mr. Crowl, I am so sorry.  This is very garbled,

5   and I am really struggling to hear what you're saying.  The

6   last thing I have that you said is, "The Governor's order

7   violates core constitutional," and that's the last thing that

8   I heard that you said.

9       Judge Settle, are you able to hear or am I the only one

10  having difficulty?

11          THE COURT:  I am having difficulty as well.

12  Mr. Crowl has asked for our patience, and you certainly will

13  have that patience.  It is still critically important that

14  both I and the court reporter and, of course, counsel for the

15  Governor, are able to clearly hear your communication.  We

16  will be patient.  Take as much time as you need, and go as

17  slowly as you need to go; we will certainly be patient here.

18          MR. CROWL:  Thank you, Your Honor.  Is this audio

19  quality any better?

20          COURT REPORTER:  This is the court reporter again.  I

21  apologize for continuing to interrupt.  It is very, very

22  faint and garbled.

23          THE COURT:  What I am going to do is ask that we

24  discontinue the video conferencing through WebEx, and we will

25  attempt to set up a telephonic-only argument here.  Now, that

1  will mean that we will have to post on the docket the phone

2  number if it is going to be different than this phone number

3  in order to engage in the purely telephonic conferencing.  We

4  will resume when we can do that.

5                    (Recessed.)

6          THE COURT:  Good afternoon, again.  I am going to ask

7  that you please identify yourself on the record here.

8          MR. LAMB:  Your Honor, this is Mark Lamb for

9  Plaintiff Joshua Freed.

10          MR. SASSER:  Your Honor, this is Hiram Sasser for

11  Plaintiff Joshua Freed.

12          MR. BUTTERFIELD:  Your Honor, this is

13  Justin Butterfield for Plaintiff Joshua Freed.

14          MR. CROWL:  Eric Crowl, plaintiff.

15          MR. EVEN:  This is Jeffrey Even from the Attorney

16  General's Office for Governor Inslee.

17          MR. JONES:  Zachary Pekelis Jones also for

18  Governor Inslee.

19          MR. WEIDEMAN:  Paul Weideman from the Attorney

20  General's Office for Governor Inslee.

21          THE COURT:  All right.  We will pick up where we left

22  off.  We were going to hear from plaintiff, Mr. Crowl.

23      Before I proceed with that, though, I want to just have on

24  the record, I think it may be there, but make it clear on the

25  record that Mr. Freed is withdrawing his motion for temporary

1   restraining order.

2          MR. LAMB: Your Honor, that is correct.  We are

3   actually drafting a motion to withdraw that with a proposed

4   order withdrawing our motion.

5          THE COURT:  We may start up again here.  Mr. Crowl,

6   again, speak as slowly as you need to in order for us to be

7   able to clearly hear you.

8          MR. CROWL:  Thank you, Your Honor.

9     So I was saying that my Complaint actually observes

10  multiple issues that there are problems with how the

11  emergency powers have been applied, that I concede that the

12  government has the -- the state government has emergency

13  authorities by law and that that was drafted through due

14  process.

15         THE COURT:  Let me interrupt you, Mr. Crowl. I'm

16  sorry.  I would like you to confine your remarks to the

17  response here from the Governor with regard to standing.

18  That is, as in the previous Freed case, there is a threshold

19  question of whether or not your claim is ripe.  So I want to

20  hear what activity it is that you wish to engage in that you

21  need and are seeking an order from the Court to restrain the

22  government from precluding you to engage in that specific

23  activity.  There must be generally a concrete plan to engage

24  in a particular activity.  That is one of the factors in the

25  *Thompson* case that was cited by the Governor.

1      MR. CROWL:  Yes, Your Honor.  I would like to be able

2  to have my newborn daughter baptized.  I would like to be

3  able to travel to a place of sacrimony to be able to worship.

4  Currently, I tried several times to go to a church, and the

5  church is closed with a posted notice "closed by order of the

6  governor."  I would like to be able to otherwise engage in

7  (inaudible) activities commensurate in the way that other

8  activities are allowed to commence with distancing, with

9  reasonable cleanliness, sanitation requirements.  I would

10  like to be offered that equal opportunity to exercise

11  religious practices that I just mentioned, that could even

12  include traveling to a place in isolation to worship.

13      THE COURT:  All right.  Thank you.  Let me hear from

14  the defendant here on this issue.

15    Mr. Jones?  I am not hearing Mr. Jones or anyone else from

16  the AG's office.

17      MR. JONES:  Your Honor, can you hear me now?

18      THE COURT:  Yes, I can.

19      MR. JONES:  Great, sorry.  Second mute snafu of the

20  hearing.  Hopefully three won't be the charm.

21    This is Zach Jones again on behalf of the Governor.

22    As Your Honor referenced, the *Thomas* en banc decision from

23  the Ninth Circuit, the three factors that apply to such

24  enforcement challenges as this one are, number one, whether

25  the plaintiff has articulated a concrete plan to violate the

1   law in question.  Number two, whether the prosecuting

2   authorities have communicated a specific warning or threat to

3   initiate proceedings.  And three, the history of past

4   prosecution or enforcement under the challenged law suggests

5   that it will be enforced against the plaintiff.

6         Mr. Crowl, neither in his Complaint nor in his motions,

7   either iteration of it, or in what you have heard today in

8   the hearing, has established any of those factors.

9         As to the concrete plan to violate the law in question, as

10  Mr. Freed just said, I would -- he says he would like to be

11  able to engage in various religious worship.  Not that he has

12  a plan to do so.

13        He mentioned he tried to go to a church, but that it was

14  closed.  That is insufficient because, at most, a TRO would

15  simply apply to the parties in this case.  At most, it would

16  allow Mr. Crowl to engage in religious worship, but the

17  third-party church not before the Court would not, of course,

18  be bound by any order to reopen and violate the Governor's

19  stay home order. That is just the first factor of the

20  concrete plan.

21        There has been no allegation regarding a specific warning

22  to initiate proceedings on behalf of any law enforcement

23  authority, nor is there any allegation of any past

24  enforcement or prosecution under the proclamation in any way

25  that might suggest Mr. Crowl is likely to be prosecuted.

1      MR. CROWL:  Your Honor, in my claim I rely on a 1983

2   claim.  It references 2000dd and 2000cc of 42 U.S.C. and, in

3   fact, I am not aware of any limits on that claim other than

4   that there is a policy in effect that bars religious exercise

5   in excess or disproportionately to other land uses.

6      And I believe I have articulated a plan and that I have

7   attempted to exercise my religious freedoms, and that because

8   of the actions the government has taken prohibiting land use,

9   that I am being barred effectively from being able to worship

10   through fellowship with others in a place of worship.

11      THE COURT:  All right.  Can you point to, then,

12   anything else in your pleadings in your Complaint or motion

13   that addresses this question of a concrete plan or that there

14   has been any evidence that you have been threatened with

15   violating any part of this law?

16      MR. CROWL:  Well, I have been threatened through

17   public announcement or proclamation.  I have not been

18   specifically threatened by any specific law enforcement

19   agency or officer.  As I noted in my Complaint, I shouldn't

20   be subject to being put in that kind of dangerous situation

21   should I engage in religious exercise.  I shouldn't have to

22   wait to be arrested and put into, you know, a harmful

23   situation to be able to assert a claim, by asserting a claim

24   that there is in effect currently a land use regulation that

25   bars me from conducting religious exercise in a reasonable

1    way.

2          THE COURT:  All right.  I believe I understand your

3    argument, and it is also laid out in your pleadings.  The

4    Court is prepared to rule here and a written order will

5    follow, and that is that the motion for the temporary

6    restraining order filed by Mr. Crowl is denied in that it is

7    not ripe.

8       Are there any questions here further?

9          MR. JONES:  Not from the Governor.

10          THE COURT:  A written order shall follow early next

11    week on Crowl versus Inslee, on this temporary restraining

12    order.  If there is nothing further, the Court will be in

13    recess.

14          UNIDENTIFIED SPEAKER:  Wait.

15          THE COURT:  Hello.

16          MR. CROWL:  Thank you, Your Honor.

17          THE COURT:  Thank you, Mr. Crowl.

18          MR. JONES:  Thank you, Your Honor.

19          THE COURT:  Good afternoon.

20                (The proceedings adjourned.)

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

4        I certify that the foregoing is a correct transcript to

5    the best of my ability from the WebEx and teleconference

6    proceedings in the above-entitled matter.

7

8

9

10   /s/ Angela Nicolavo

11   ANGELA NICOLAVO
     COURT REPORTER
12

13

14

15

16

17

18

19

20

21

22

23

24

25